The next case on the docket is Zahourek v. Balanced Body University, 18-1300. And let me just mention to the appellee, I know that you all are, you're splitting your time, right? Okay, just a warning, you know, that when we start asking questions, sometimes it's hard for the first person to sit down. So don't get upset if you don't divide it just like you planned. Okay, we'll hear from the appellant. May it please the Court, David Nimmer with Nicole Rissou on behalf of Plaintiff Appellant John Zahourek and Zahourek Systems. This case is a copyright case. We are in appeal from a summary judgment on behalf of the defendant. Now, in every copyright case, the plaintiff must prove two elements. First, that it owns a valid copyright, and second, that the defendant copied the work. We never reach the second element in this case because the court ruled as a matter of law that there is no protection for the plaintiff's work, a 3D sculpture. The district court committed error in two regards in that respect. First, the district court ruled that the sculpture in question, which was registered by the U.S. Copyright Office as a work of the visual arts, a 3D sculpture, was a useful article. And the second error that the district court committed was to conclude that as a useful article, it did not incorporate protectable features. So let's focus immediately on the first error. What is a useful article? Well, in some lay terms, a useful article is understood as anything that has utility, but that is not the way Congress has defined it. The statute, 17 U.S.C. Section 101, defines a useful article as an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. Therefore, any time we have something that merely portrays the appearance of a given item, it is not, by definition, a useful article. That is the situation that we are in here. To start with some relevant precedent, even BBU, our opponent, concedes that an animal nose mask is not a useful article, technical drawings for machinery are not useful articles, and a model airplane is not a useful article. Here, what we have is a 3D sculpture that portrays the appearance of a skeleton. The name of the sculpture is Student Mannequin 1, and in a fanciful and artistic way, Student Mannequin 1 portrays the appearance of a skeleton. In fact, interestingly, the question of protection for mannequins has been adjudicated by sister circuits, which both concluded that the mannequins in question were not useful articles, precisely because they portray the appearance of something. Both of the cases happen to be against the same defendant, Dan Chase Taxidermy. In the first case, the heart case, the second circuit was concerned with fish mannequins, and the argument that the defendant made is the same argument that BBU makes here, namely that these are useful articles. The second circuit rejected that proposition. To quote the court, the fish mannequin is designed to be looked at. That the fish mannequin is meant to be viewed clothed by a fish skin rather than naked and on its own makes no difference. The function of the fish form is to portray its own appearance, and that fact is enough to bring it within the scope of the Copyright Act. The same principle applies here. And moving from the second circuit to the fourth circuit case, also involving the same defendant, in superior form builders, the fourth circuit commented, even though covered with the skin, the mannequin is not invisible, but conspicuous in the final display. None of the expressive elements are lost by covering the mannequin with the skin. Thus, any utilitarian aspect of the mannequin exists merely to portray the existence of the animal. The same circumstances are present here. It's possible to put some clay over Mr. Zurich's mannequin, and it's possible to appreciate it for its own sake. Whether clay is put over it or not, the only function of the mannequin is to portray the appearance of a skeleton. Given that the sole intrinsic utilitarian function is as such to portray the appearance, the mannequin does not constitute a useful article. It is therefore entirely protected as a sculptural work under the terms of the Copyright Act, and for that reason, the district court committed error. It's reversible error, which requires a remand to the district court so that both elements of a copyright infringement case may unfold. Moving forward, the second error that the district court committed was to determine, even if it were a useful article, that it stands outside copyright protection. So let's imagine for a moment that the sculpture in question was a useful article. We can come at that by imagining a different case in which not Mr. Zurich, but someone else designed a skeleton to be adorned with clay. We can imagine a skeleton that is hollow with a cylinder in the middle, which has an embossed legend, insert clay here. We can further imagine that there's a motor in this hypothetical sculpture that extrudes the clay and grommets located along the skeleton to guide where the clay should be put. That would be a useful article. That would be an article that has an intrinsic utilitarian function. If that were the case that we were considering, we would be governed by the Supreme Court's recent authority in Star Athletica. In that case, the Supreme Court defined how to determine whether a useful article should be subject to copyright protection, and the Supreme Court enunciated two requirements. The first is extremely straightforward. The decision maker need only be able to look at the useful article and spot some two or three dimensional elements that appears to have sculptural qualities. In that hypothetical clay extruding skeleton that we imagined, there would be sculptural features. If the clay extrusion simply consisted of a metal cylinder without any features, then it would fail that first test. But if it were designed as a full skeleton, then it would have sculptural features. The second test that the Supreme Court outlines is that, using the language of the statute, that it be capable of existing independently of the utilitarian aspects of the article. For that reason, the U.S. Supreme Court ruled that the features must be able to exist as its own pictorial, graphic, or sculptural work if it is imagined apart from the useful article. In our hypothetical of a skeleton that also had functionality for storing clay and extruding clay, the question is, if we separate those features out, can we still imagine that there is a sculptural work? And in that hypothetical case that I have just conjured up, the answer is extremely straightforward. There would be those sculptural features. In fact, if we look at the reported decisions that the various circuit courts handed down before the Supreme Court ruled in Star Athletica, we see that almost all of them would obtain copyright protection. The only ready example that I can think of that would still be denied protection after the Supreme Court's Star Athletica ruling is Brandeer. That's the case, if your honors will remember, involving a bicycle rack. The bicycle rack consisted of an undulating metal rod that could serve as a rack because in between the concave parts, somebody could park a bicycle. In that particular instance, if we separate out the useful features and imagine it without the useful features, there would be nothing left because all there was was undulating metal, and taking away that metal would leave nothing. In the other cases, when we perform the analysis that Star Athletica commands, we are still left with a sculptural work. And for that reason, in this case in particular, we would still have all the sculptural features that Mr. Zuchoruk embedded into his sculptural work, and plainly there should be protection. For both those reasons, we submit that the district court committed error, and unless there are any immediate questions, I would like to reserve the balance of my time for rebuttal. Judge McKay, do you have any questions for the appellant? Well, I have one. It's a little long. It happens that there's a monument to the pioneers in my hometown park, a husband and a wife, child, and the husband is holding in one hand a shovel. The sculptor actually bronzed his father's actual shovel and included it in the monument. Is it protectable or not, either whole or part? Well, Judge McKay, that is a beautiful question that could be designed for a law school hypothetical, because the facts match the precise facts of the Supreme Court's footnote 2, in which they talk about the protectability of a shovel. And in that footnote, Justice Thomas remarks that a shovel is still a shovel and still has a functional usage, even if it is displayed in a museum. And therefore, Judge McKay, not having had the benefit to see the sculpture in your hometown, I would posit that if a real shovel were used in the sculpture, that aspect of the sculpture would not be subject to protection. In other words, the man who has a shovel in his hand, if we focus only on the shovel in his hand, that portion is not subject to copyright protection, because it's an actual work that has an intrinsic utilitarian function to dig, even though it's not being used to dig in that context. The rest of the sculpture, however, would be fully subject to copyright protection. The depiction of the man and the woman and the child, those would attract full copyright protection. Judge McKay, do you have any follow-up questions? No, I'm absorbing the answer. Okay. Thank you. Well, thank you very much, counsel. We'll hear from the appellee. Thank you. Good morning. May it please the court. Carolyn Juarez for Appellee, Cross Appellant, Balanced Body University, and I will be presenting Balanced Body University's position on the issue of the invalidation of the Zoharic's copyright. Counsel's presentation was an informative and illustrative overview of the current status of copyright law, which I think that I appreciate. I hope the court appreciates that as well. But what is absent from counsel's presentation is the record evidence, the record evidence on appeal that was presented to the court at the summary judgment stage. And on that record, the district court got it right. The legal conclusion that the copyright is invalid is correct, and it's fully supported by the undisputed facts in the record. Was Judge Moore correct when he said in his first order that the utilitarian function of this sculpture was to portray his appearance, to portray the appearance of the skeleton? I think Judge Moore, in his order on the motion for reconsideration, clarified that in that order, the omission of the word not was a typo, was a typographical error. And in his order, he cited to nearly 30 references in the record that support the conclusion that it has an intrinsic utilitarian function that is not merely to portray its own appearance. Well, what he said in his order on reconsideration is my recollection, is that anything that has an intrinsic utilitarian function is not subject to the copyright. And so there is an intrinsic utilitarian function of this sculpture. Did I accurately summarize his order on reconsideration? The order on reconsideration, there was some inexact language with respect to what merely constitutes something that portrays its own appearance and what does not merely constitute a sculpture that portrays its own appearance. But I think the clear portion is that his order on summary judgment incorporates the undisputed facts, including Mr. Zahorek's own admissions, that the student one mannequin is a useful model of skeletal ideas, that it is a meaningful armature upon which students can explore muscular ideas, that it contains clear landmarks and paths to guide the user in accurate placement of clay muscles on the model, that students can mark on the model and use colored clay to build the muscles. So it has this inherent value, this utilitarian value for students. Why is there this utilitarian value? In other words, if the skeleton looked like the skeleton of a fish or of a koala bear, would it still have this utilitarian function for the students of Balanced Body University? Yes, it would. And I think that what you're referring to are the cases in a present council presentation regarding heart and superior form builders. This skeletal model is different from those taxidermy ones. Well, I'm really not. I'm just saying so you're saying so a student of Balanced Body University, I don't know what they teach at Balanced Body University, but if they're teaching people about the muscle, where the muscles are, where the bones are, to use a model of a koala bear, I don't know how you can teach that from the skeleton of a koala bear. I think Judge Moore was realistically saying, no, the utilitarian value is because these two sculptures that are subject to dispute are the portrayal of a human skeleton. And that's where the utility for the students lies. What Judge Moore was saying in his order is that, no, so at Balanced Body University, they teach bodywork practitioners about the human body. The way that they use Mr. Zohoric's skeletal models is as a base on which the students can build clay. They can outline the way that the muscles run so that if your owner were to go get a massage from a masseuse who'd been trained at Balanced Body University, that masseuse would know which muscles to press during the massage. So it's essentially to know where the muscles go. The student couldn't use a koala model. And what I think the court was saying, what Judge Moore was saying, is that the value is that the skeletal model becomes something that the students learn musculature from. This is similar to the pivot point case. In pivot point, pivot point was a mannequin of a human form on which the students learned how to apply makeup. And the court in pivot point determined that that was a useful article. The very act of being able to use that model to apply and to learn from constituted utility and constituted intrinsic utilitarian function. But it's not the end all and be all that it has utilitarian function. Otherwise, the World Book Encyclopedia wouldn't be subject to copyright protection, right? Correct. It has a utilitarian value, but the information, the utilitarian content, can be depicted in all sorts of different ways. So the intrinsic utilitarian value does not lie simply in its appearance. It lies in the fact that that appearance can be used to build that clay musculature. So it's not that a student can look at the skeletal form and point out, this is where this rib is, or this is where this particular bone is, or this is where the hyoid bone is. It's that the student can take that model and then fashion or enrobe it in different pieces of colored clay, mark on it with a pencil as to where the insertions of the muscles are. In fact, the model itself contains holes and indications where the muscles should run. So what I think Mr. Kimber is arguing is that the way that you can arrive at that utilitarian function is solely because this Sculpture 1 or Mannequin 1, Mannequin 2 depicts a human skeleton. It can't look like the skeleton of a fish. It has to look like a human skeleton. And so the utilitarian value lies solely in its appearance, not like a belt that can have utilitarian value and it can look in all sorts of different ways. But what's wrong with that argument? What's wrong with that argument is that it's similar to the case in Pivot Point, where you have a mannequin, you have a human form that was designed to look like a runway model. That in itself, it portrays the appearance of a human being. The utilitarian function lied more than just its mere appearance. It was used by students learning the art of makeup application, I believe is what the court said. And so that takes it beyond simply appearing as a skeleton itself. And the utilitarian function lies in how it is used by the students that use it. And just going back to something that Counsel for Zohorek said, this is not similar to the heart in the superior form builder's cases. This is not a case in which students in Balanced Body University's classes roll out a piece of clay and then just drape it over the skeletal model. This is a very interactive process where the students form. They roll out specific muscles. Some muscles are larger than other muscles. They themselves roll those muscles out and attach them to the skeleton. So the end product does not have any expressive elements. It does not have the skeleton in motion. It does not show a gesture. It does not show a tilt of the head as the mannequins in superior form builders did. There is nothing that remains after the students enrobed this in clay other than their particular striations and formations of the muscles that are attached to the human skeleton in ways that are indicated by the features of the mannequin. And the court considered that record evidence, considered Mr. Zohorek's own admissions, and reached the conclusion that this skeletal model is a useful article because it is an interactive hands-on learning tool for teaching anatomy. Second, the district court got it right when it determined that the skeletal model has no features that are separable and eligible for copyright protection. Zohorek's are constrained by the record at the summary judgment stage. They did not identify anything other than just in passing a few features of the skeletal model that could conceptually be separable from the model itself. The ears, the nose, the eyes, the shape of the head. And the evidence at the summary judgment stage is undisputed that the inclusion of those features makes it easier to build those muscles. Rather than students at Balanced Body University having to shape a whole ear or to sculpt a whole nose, it makes it easier for them to see those landmarks on the head of the skeletal model and then form the facial muscles, which are tiny and attached to those parts of the body in different ways. The eye sockets are shallow to facilitate the placement of clay over the eye orbit. The eye sockets are not shallow for any sort of aesthetic purpose. It's for the utilitarian purpose of the attachment of clay. Doesn't this undermine your first argument? In other words, it can't be, for example, a sculpture that replicates a Picasso painting. Otherwise it would have no utilitarian value. Utilitarian value comes because of the replication of the eyes, the nose, the vertebra of a human skeleton. I don't agree that those features are conceptually separate from the utilitarian model as a whole. I'm just saying that that was the evidence that was identified at the summary judgment stage. Those were the only features that were mentioned. And I'm cutting back to your first argument. Right. And so that skeletal form and its utilitarian function are not separable by features. It is as it is. It stands as a whole. Similar to Judge McKay's example of a shovel in the sculpture. You have a shovel that has been cast separating out the shaft of the shovel or the handle of the shovel. Simply because those have been cast in bronze, does that separate them from their utilitarian function so that they could become independently copyrightable? And it would not. The shovel itself remains. That intrinsic utilitarian function applies to the shovel as a whole. Does it make a difference, counsel, that that shovel is bronze before incorporating it in a bronze monument? So, Your Honor, a bronze shovel can still be used to shovel snow. It may not be as efficient or as effective as a steel shovel, but it can still be used and it still has an intrinsic utilitarian function. And that's the benefit of being able to move snow away from a sidewalk, for example. Now, counsel is also focused on Star Athletica. Star Athletica, in this case, does not mandate reversal for two reasons. First, the reason that Zohorix were even talking about Star Athletica in this case is that in the interim period between their motion for reconsideration and the court's order on the motion for reconsideration, Star Athletica was decided. However, Star Athletica was decided March 22, 2017. The court's order on the motion for reconsideration came out April 3, 2017. In that intervening time period, Zohorix never renewed their motion for reconsideration. They never provided a notice of supplemental authority. They never argued to the court that it presented a change in controlling law. Why is that relevant? The judge has to apply the law. In fact, we find Henderson, in fact, a Supreme Court case said that even to determine whether or not something is an obvious error and a plain error, even if a precedent hadn't even been decided at the time of the district judge's decision, it's still in order to show that there was an obvious error. Judge Moore had to apply the law. Star Athletica had already been decided. And so whether or not Mr. Nimmer advised Judge Moore of Star Athletica's decision or not, Balanced Body University didn't either. It had been decided. Judge Moore had to apply Star Athletica. So why does it matter that they didn't submit the equivalent of a 28-J letter? It doesn't. It would not change the ultimate outcome. All right. So the reason it's only being discussed at this point is because there was a pending motion. But even if Judge Moore had applied Star Athletica, Star Athletica addressed only the second part of the inquiry discussed by Mr. Nimmer. It did not address whether the chevrons on the cheerleading uniform were useful articles. It really only—so it was undisputed. Cheerleading uniforms are useful articles. It's only the second part of it. Is there anything separable and independently copyrightable? So Star Athletica would not change Judge Moore's determination. Can I ask you one question about what Judge Moore clarified? And I want to ask you if Balanced Body University is prepared to defend what Judge Moore said, is that if something has inherent utilitarian value, that that is always a useful article. I would not take it that far. So you don't agree with what Judge Moore said? In his order for reconsideration. I agree with what Judge Moore said with respect to the skeletal model at issue on summary judgment. But you don't agree with what he said the law is? I don't agree with the broad prescription that anything that has inherent utilitarian function is non-copyrighted. And that's what he said, right? That is the statement he made. Then he cited the record evidence for this case for the skeletal model. All right. I would like to just point out to the court, we do have a cross appeal. I don't have any time remaining, but if the court would like to hear questions on 18-13-12, we would like to reserve any time at the end of the copyright argument. We'll give you all three minutes to talk about the attorney fee issue. Would you like to discuss that now? Now is as good as any. Mr. Posthumous will present Balanced Body University's argument on that. Just to be fair, not that I'm King Solomon, but I'm going to give you an extra minute and a half for rebuttal. Thank you. May it please the court, my name is John Posthumous. I'm appearing on behalf of Balanced Body University. It's with regard to the attorney's fees portion of the appeal, which admittedly is not as exciting and as creative as the first part of this appeal. What we have here is ultimately a question of whether or not an attorney's fees motion, based both on being a prevailing party in the trademark portion of the case, as well as the copyright portion of the case, should have been considered by the court even though it was filed a day late. In this particular situation, there was a motion that was filed on the due date, asking for an extension of time. The next day, in connection with that motion, there was a meet and confer that was attempted by both telephone and e-mail. There was no response, and later that evening the motion was filed for extension of time. The next day, the Zohoreks, the plaintiffs in the case, filed their opposition, and later that afternoon, which happened to be a Friday, Judge Moore issued his first order denying that motion. Subsequently, later that evening, there was a second motion that was filed with regard to accepting the attorney's fees motion out of time under 6B and an additional declaration that was made. In connection with that motion, there was again a meet and confer attempted by e-mail, but that was not completed prior to the filing of the motion. In the time that I have, I'd like to address one specific issue and then leave the remaining issues to the briefing, and that is under Colorado Federal District Court Local Rule 7.1a, the standard is whether or not there was a reasonable conferral in the meet and confer process. Clearly, the purpose of the meet and conferral is to determine the opposing party's position with regard to the motion at hand. We would argue that the reasonableness that should be applied is dependent on a case-by-case basis, if you will, on a filing-by-filing basis. Here, certainly, the case was virtually at its end. Final judgment had been entered. There was clearly no doubt that the Zohorix would oppose the motions. In fact, they did oppose the first one. We never received an opposition with regard to the second one because the court denied that motion. So reasonableness in conclusion should be interpreted based on the situation, not necessarily a strict standard in terms of timing and allowing sufficient time for response. Thank you. Do you have any questions? No. Judge McKay, do you have any questions for the appellate? No, I have no more questions. All right. Thank you, Judge. We'll hear from the appellant. Thank you, Your Honor. Let's focus on what Judge Moore did say in his revised order. On April 3, 2017, he acknowledged that there might have been a typographical error in his previous order. In our motion for reconsideration, we did point out that Star Athletica was pending, and we asked the judge to correct the misstatement of law. But instead, Judge Moore simply doubled down. To quote from pages four to five of that order, the mannequin has an intrinsic function to merely portray the appearance of a lifelike form. That falls within the statutory definition of useful article. In other words, the intrinsic utilitarian nature of an article can be more than merely portraying its appearance to be a useful article. But here, the mannequin does not even reach that level. It merely portrays its appearance. Judge Moore made a specific finding that is an error of law. He applied the statute to mean exactly the opposite of what the statute says. We agree with him that the mannequin portrays its appearance, and because of that, it is not a useful article, as Congress has defined the term. We heard from counsel that Pivot Point involved a case in which the court concluded that it was a utilitarian article. So it's important to go back to the Seventh Circuit's decision. The district court in that case ruled exactly the same way that the district court ruled in this case. First, it said that Mara was a useful article, and second, that it had no protectable features. The appeal was exactly the same appeal that we have today. The plaintiff said, no, it is not a useful article, and even if it were, it has protectable features. The Seventh Circuit reversed. The Seventh Circuit did not hold that Mara was a utilitarian article. Instead, it said, quote, we shall assume that the district court correctly ruled that Mara is a useful article, and proceed to examine whether, despite that usefulness, it is amenable to copyright protection. And the Seventh Circuit also commented in passing that the evidence cited by the district court was susceptible to more than one interpretation, meaning that the district court was suspect in that regard as well, but it was not necessary to investigate it because the Seventh Circuit reversed. In this case, we submit that the court should reverse based on the error of applying the useful article doctrine, but it also should reverse based on the fact that this was not a useful article because it merely portrays its appearance. Much of what we heard from the presentation of counsel concerned what students at defendants' institutions can do. They can roll out muscles, and they can do various things. The same applies to the toy airplane that was held to be not a useful article. Students could use that airplane to paint around windows and wings. They could use it to put lights on it to see if it's more useful, more functional, to have three red lights in back or one blue light in front. What is done with the article is of no moment. The question is whether the article itself has an intrinsic utilitarian function. The toy airplane did not, and likewise the mannequin student one does not. Well, Mr. Dipper, let me ask you this. If you, say, separate the vertebra more than they would typically be separated on a typical human skeleton, it would still have a utilitarian function, and yet the appearance would be different, right? Much like a belt might look differently but still have a utilitarian function. So why isn't the fact that mannequin one or mannequin two portrays a human skeleton, it could still portray a human skeleton in different ways? Absolutely, and Mr. Zahurik made various artistic judgments to distort forms, to make it not look like a real-life skeleton. Those are all circumstances that increase the magnitude of the copyright protection and that make copying more actionable. But in any event, the only intrinsic utilitarian function of the mannequin is to portray the appearance of a skeleton, and for that reason it is not a useful article. Turning very briefly to the attorney's fees question, in Pioneer the U.S. Supreme Court ruled that there was excusable neglect when the bankruptcy court itself sent out an ambiguous notice that could be taken in two different ways. There is no case that has been cited by BBU in which a court has taken the action that BBU requests this court to take. Namely, there is no case in which a district court concluded that a late filing was not excusable neglect and was reversed for that. This would be a first of its kind if the court were to rule in that regard. Relevant here is what the Supreme Court stated in Lujan v. National Resources. Namely, the district court could have overcome the obstacles to admit the affidavits at issue, but the proposition that it was compelled to receive them, that it was an abuse of discretion to reject them, cannot be accepted. Likewise in this case. The district court had discretion to determine that it was excusable neglect and had discretion to conclude that it was not excusable neglect. There is no basis to reverse, in other words, to say that the district court was compelled to determine that there was excusable neglect for a late filing. Were you prejudiced by the one-day delay? I'm not aware of any specific prejudice that Zuhurik suffered because of that one-day delay. Okay. Thanks. Judge McKay, do you have any questions for the appellant? No further questions. Okay. Thank you, Judge. This matter will be submitted.